UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| BRENDA KIDD VICKERS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN[1], ) <br> Acting Commissioner of the Social ) <br> Security Administration, ) <br> ) <br> Defendant. ) <br> _____ ) | Case No. EDCV 12-1445 AJW <br><br><br><br> MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of the defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The procedural facts, which are undisputed, are summarized in the joint stipulation. [JS 2-3]. In June 11, 2010 written hearing decision that constitutes the Commissioner's final decision in this matter, the administrative law judge ("ALJ") found that plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work as a foster care provider. [Administrative Record ("AR") 25]. Alternatively,

---

[1] Carolyn W. Colvin is substituted for her predecessor in office, Michael J. Astrue. See Fed. R. Civ. P. 25(d).

the ALJ found that plaintiff's RFC did not preclude her from performing jobs available in significant numbers in the national economy. [AR 25-26]. Therefore, the ALJ concluded that plaintiff was not disabled from May 15, 1997, her alleged onset date, through December 31, 2000, her date last insured for disability insurance benefits purposes. [AR 26].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

**Step four**

Plaintiff contends that the ALJ erred in finding that she is capable of performing her past relevant work as a foster care provider as actually and generally performed. [JS 26-30].

At step four of the sequential evaluation procedure, the ALJ found that plaintiff "was capable of performing past relevant work as a foster care provider." [AR 25]. "Past relevant work" is defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). Therefore, work that is not "substantial gainful activity" ("SGA") does not qualify as past relevant work. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1221 n.1 (9th Cir. 2009) (holding that the claimant's "stint as a grocery clerk" was not SGA and therefore "cannot be considered 'past relevant work'").

SGA "is work activity done for pay or profit that involves doing significant physical or mental activities, taking into account the nature of the work, how well it is performed, whether it is performed under special conditions, self-employment, and time spent working. See 20 C.F.R. §§ 404.1572-.1573, 416.972-.973. Under the Commissioner's regulations, a claimant's earnings create a rebuttable presumption that work activity was (or was not) SGA. See 20 C.F.R. §§ 404.1574(b), 416.974(b) (explaining that earnings above a prescribed threshold, or below a prescribed floor, "ordinarily" will show that the claimant either has, or has not, engaged in SGA, and that earnings between those amounts may be considered in conjunction with other information to assess SGA).

At step one of the sequential evaluation procedure, ALJ concluded that plaintiff's testimony indicated that her earnings as a foster parent met the "regulatory criteria" for SGA, that is, they created a rebuttable presumption that she engaged in SGA. However, the ALJ did not find that plaintiff's past as a foster care provider was SGA; instead, he found that it was "most likely" SGA. The ALJ explained that, "viewing the evidence in the light most favorable to the claimant, it is sufficient to find that her work activity demonstrates the ability to perform work on a regular and recurring basis." [AR 22].

Since the ALJ declined to make an affirmative, unequivocal finding that plaintiff's work as a foster care provider was SGA, he erred in finding that her work as a foster care provider was past relevant work for purposes of his step four finding.[2]

**Step five**

Plaintiff contends that the ALJ's alternative finding of nondisability at step five was flawed in two respects. First, plaintiff contends that the ALJ erred in not finding her disabled pursuant to Rule 201.12 of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"). [JS 7-20]. Second, plaintiff argues that the ALJ's hypothetical questions to the vocational expert erroneously omitted nonexertional environmental limitations consisting of the need to avoid concentrated exposure to cold temperatures and concentrated exposure to hazards such as unprotected heights and machinery. [JS 20-25].

---

[2] The vocational expert's testimony adds no support to the ALJ's finding that plaintiff's work as a foster parent qualified as past relevant work. Notwithstanding plaintiff's testimony about her history, compensation, and duties as a foster parent [AR 42, 48-49, 51-54], the vocational expert did not mention that work in her testimony regarding plaintiff's past relevant work. [AR 60-69].

3

**The grids**

The ALJ found that plaintiff retained the RFC to lift and carry ten pounds frequently and twenty pounds occasionally; stand and walk for two hours in an eight-hour workday; sit for six hours in an eight-hour workday; and engage in postural activities occasionally. Plaintiff also was precluded from climbing ladders, ropes, and scaffolds. [AR 23-25; see also AR 59-60, 389-396].

Plaintiff argues that in formulating plaintiff's RFC, the ALJ mischaracterized the testimony of the non-examining medical expert, Dr. Landau. During the hearing, the ALJ read aloud certain exertional limitations assessed by the state agency nonexamining physician, Dr. Kalmar, at Exhibit 3F (AR 389-396) and asked Dr. Landau whether he disagreed with them. Dr. Landau testified that he agreed that plaintiff could meet the lifting and carrying requirements of light work, but he disagreed that plaintiff could meet the standing and walking requirements of light work, as Dr. Kalmar indicated. [AR 58-59]. Dr. Landau opined that plaintiff could stand and walk for only two hours in an eight-hour day and could sit for the remaining six hours, which is consistent with the standing, walking, and sitting requirements of sedentary work. [AR 58-59].

The ALJ then asked Dr. Landau whether, in his opinion, there was ever a 12-month period of time during which plaintiff had an RFC that was "less than what I read from [Exhibit] 3F," the exhibit that contains Dr. Dr. Kalmar's RFC assessment. [AR 59]. Dr. Landau said no. [AR 59]. Presumably on account of the apparent contradiction between Dr. Landau's answer to that question and his testimony just moments earlier disagreeing in part with Dr. Kalmar's assessment, plaintiff's counsel interjected, "the doctor disagreed with the standing –." [AR 59]. Before he could finish his sentence, the ALJ replied, "I've already got that. . . . I'm including that in the hypothetical." [AR 59].

The ALJ included Dr. Landau's more restrictive standing and walking limitation in his hypothetical question to the vocational expert and in his formal RFC finding. [AR 23, 64]. However, the ALJ also wrote, that Dr. Landau "could find, consistent with [Dr. Kalmar's opinion] at Exhibit 3F, no 12 month period in which the claimant could not perform at least light work." [AR 24]. That statement is inaccurate because it omits reference to Dr. Landau's testimony that plaintiff could not perform the standing and walking requirements of light work.

Plaintiff contends that the ALJ's misstatement of Dr. Landau's testimony was error. "Reversal on

4

1 account of error is not automatic, but requires a determination of prejudice," which requires "case-specific
2 application of judgment, based upon examination of the record, not mandatory presumptions and rigid
3 rules." Ludwig v. Astrue, 681 F.3d 1047, 1054  (9th Cir. 2012) (footnotes and internal quotation marks
4 omitted). "The burden is on the party claiming error to demonstrate not only the error, but also that it
5 affected h[er] substantial rights, which is to say, not merely h[er] procedural rights." Ludwig, 681 F.3d at
6 1054 (footnotes and internal quotation marks omitted).   Plaintiff has not demonstrated a "substantial
7 likelihood of prejudice" from the ALJ's misstatement of Dr. Landau's testimony. Ludwig, 681 F.3d at
8 1053-1055 (holding that the claimant did not show a substantial likelihood of prejudice as a result of the
9 ALJ's error where he did not demonstrate that the ALJ's decision would have been different without the
10 error). The ALJ included Dr. Landau's more restrictive standing and walking limitation in his hypothetical
11 question to the vocational expert, whose testimony indicates that she expressly considered those limitations.
12 [See AR 66-67]. The ALJ also incorporated those limitations in his formal RFC finding.  Therefore, any
13 error in the ALJ's misstatement of Dr. Landau's testimony was harmless.

14 The ALJ determined that plaintiff, who was born on January 13, 1948 and was 52 years old as of
15 her date last insured on December 31, 2000, was a person "closely approaching retirement age,"[3] had "at
16 least a high school education," was able to communicate in English,  and had acquired transferable work
17 skills from her past relevant work.   Using Rules 202.00 and 202.07 of the grids as a "framework" for
18 decision-making, and relying on the testimony of a vocational expert, the ALJ found that plaintiff's RFC
19 did not preclude her from performing jobs available in significant numbers in the national economy, namely
20 certain cashier, bench assembler, and charge account clerk jobs. [AR 25-26].

21 Plaintiff contends that the ALJ's finding that plaintiff had transferable skills is not based on
22 substantial evidence in the record. [JS 12-13].  That argument has merit. "A skill is knowledge of a work

---

24 [3]    Plaintiff correctly contends that the ALJ erred in finding that plaintiff was a person "closely
25 approaching retirement age" (defined as age 60 and above) on her date last insured because she was
 only 52 years old on that date, making her a person "closely approaching advanced age." [JS 12 &
26 n.9]. See 20 C.F.R. §§ 404.1563(d)-(e), 416.963(d)-(e); see also SSR 83-10, 1983 WL 31251, at *8
 (explaining that when a claimant for social security disability insurance benefits "last met the
27 insured status requirement before the date of adjudication, the oldest age to be considered is the
 person's age at the date last insured").  This error, however, could not have prejudiced plaintiff
28 because it resulted in her being classified more generously under the grids than she deserved.

1  activity" that "is acquired through performance of an occupation which is above the unskilled level . . . ."
2  SSR 82-41, 1982 WL 31389, at *2; see Podedworny v. Harris, 745 F.2d 210, 220 (3d Cir. 1984) (quoting
3  that definition).  In general, an ALJ can find that a claimant has transferable skills "when the skilled or
4  semi-skilled work activities [the claimant] did in past work can be used to meet the requirements of skilled
5  or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 404.1568(d)(1); Vertigan v.
6  Halter, 260 F.3d 1044, 1052 (9th Cir. 2001).

7  　　　　The ALJ found that "[b]ased on the testimony of the vocational expert," plaintiff "acquired work
8  skills from past relevant work that were transferable to other occupations," and that the "vocational expert
9  testified that the claimant's previous work is so similar to the jobs recited above that the claimant would
10 need to make very little, if any, vocational adjustment in terms of tolls, work processes, work settings, or
11 the industry." [AR 26].   That is not an accurate characterization of the record.  The vocational expert
12 unequivocally testified that plaintiff had past relevant work as a "hand  packager" and an "inspector hand
13 packager," and that both of those jobs were "unskilled." [AR 64].   A claimant cannot acquire skills,
14 transferable or otherwise, from unskilled work.  See SSR 82-41, 1982 WL 31389, at *2.  Moreover, the
15 vocational expert was not asked to testify, and did not testify, as to how much, if any, "vocational
16 adjustment in terms of tools, work processes, work settings, or the industry" would be required, and the
17 issue of "vocational adjustment" applies *only* when the claimant is age 55 or older in any event.  See 20
18 C.F.R. §§ 404.1568(d)(4), 416.968(d)(4); see also 20 C.F.R. Part 404, Subpart P, Appendix 2, §§ 201.00(e)-
19 (f), 202.00(e)-(f);  Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

20 　　　　Due to plaintiff's age on her date last insured and her lack of transferable skills, Rule 202.13 is
21 inapplicable. Plaintiff contends that the ALJ committed reversible error in using that rule as a "framework"
22 for his decision.  She also contends that because her RFC as found by the ALJ is "almost strictly sedentary,"
23 Rule 201.12 applies and directs a finding of disability based on her exertional limitations alone. [JS 11-14,
24 18-20].

25 　　　　At step five of the sequential evaluation procedure, the Commissioner has the burden of establishing,
26 through the testimony of a vocational expert or by reference to the grids, that the claimant can perform other
27 jobs that exist in substantial numbers in the national economy.  Bruton v. Massanari, 268 F.3d 824, 827 n.1
28 (9th Cir. 2001) (internal quotation marks omitted).  Where, as here, a claimant suffers from both severe

1  exertional and non-exertional limitations, the ALJ must consult the grids first to determine whether the grids
2  direct a finding of disability based on the claimant's exertional limitations alone. If the grids dictate a
3  finding of disability based on the claimant's exertional limitations alone, benefits must be awarded. 20
4  C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e)(2); see Lounsburry v. Barnhart, 468 F.3d 1111, 1115-
5  1116 (9th Cir. 2006); Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989). The ALJ "may not look to
6  other evidence," such as a vocational expert's testimony, to rebut, supplant, or override a finding of
7  disability directed by the grids based solely on a claimant's exertional limitations. Lounsburry, 468 F.3d
8  at 1116. If, however, a claimant's severe exertional impairments are not "enough, by themselves, to warrant
9  a finding of disabled," the ALJ must look to other evidence, such as a vocational expert's testimony, to
10 conclude that the claimant is not disabled, using the grid rules as a "framework" for that decision. See 20
11 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e)(2); Lounsburry, 468 F. 3d at 1116. Thus, where a
12 claimant has a combination of severe exertional and nonexertional limitations, the grids must be consulted
13 first and may direct a finding of disability based on the exertional limitations alone, but the grids may not
14 be used to deny benefits because they do not establish the existence of jobs for persons with nonexertional
15 limitations. See Lounsburry, 468 F.3d at 1116.

16      Rule 201.12 applies to a claimant who has a "maximum sustained" exertional capacity for sedentary
17 work, is closely approaching advanced age, is a "high school graduate or more" whose education "does not
18 provide for direct entry into skilled work," and whose past work experience is "unskilled or none."
19 Although plaintiff meets the age, education, and skill criteria of that rule, her argument that Rule 201.12
20 mandates a finding of disability is foreclosed by Moore v. Apfel, 216 F.3d 864 (9th Cir. 2000) and SSR 83-
21 12, the latter of which provides adjudicatory guidance for the situation where a claimant's exertional
22 capacity falls between two grid rules that direct opposite conclusions.

23      Plaintiff's exertional capacity as found by the ALJ is not "strictly sedentary," as she contends,
24 because the ALJ found that she can perform the lifting and carrying requirements of light work. See 20
25 C.F.R. §§ 404.1567, 416.967 (exertional capacity level definitions). For that reason, plaintiff's maximum
26 exertional capacity as found by the ALJ falls between the sedentary and light levels. See 20 C.F.R. §§
27 404.1567, 416.967.

28      When a claimant's "exertional limitations put [her] between two rules," and "the exact place that

[she] falls is difficult to determine as [she] also suffers from nonexertional limitations," eliciting testimony from a vocational expert is appropriate. Moore, 216 F.3d at 870 (citing SSR 83-12); see SSR 83-12, 1983 WL 31253, at *2 ("In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere 'in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining vocational base to support a conclusion as to disability. Accordingly, [vocational expert] assistance is advisable for these types of cases."). Therefore, the ALJ did not commit legal error in failing to apply Rule 201.12 and in relying on the testimony of a vocational expert to support his determination that plaintiff was not disabled.

Plaintiff argues that her exertional capacity was not "in the middle" between light and sedentary work because a primary characteristic of light work is that it demands "a good deal of walking or standing." [JS 18 (citing 20 C.F.R. § 404.1567(a))]. Plaintiff's inability to stand and walk for more than two hours a day limits the number of light jobs she can perform, but it does not categorically exclude her from performing all light work. See 20 C.F.R. § 404.1567(b), 416.967(b) ("Even though the weight lifted may be very little, a job is in this category [light work] when it requires a good deal of walking or standing, *or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.")* (italics added). Furthermore, the vocational expert identified specific "light" jobs that a hypothetical person with the exertional capacity described by the ALJ could perform. The vocational expert testified that the hypothetical person could perform the light, unskilled jobs of cashier II and bench assembler because there are jobs within both of those occupations that are performed primarily in a seated position, but involve lifting and carrying at the light exertional level. [AR 66]. The vocational expert testified that the occupational base for both of those jobs would be eroded due to the limitation to no more than two hours of standing and walking per day, but that there would be still be more than 30,000 positions for each of those jobs available nationally. [AR 65-66]. The vocational expert also testified that the hypothetical person could perform the sedentary, unskilled job of charge account clerk with no erosion of the occupational base. [AR 65]. The vocational expert's testimony provides substantial evidence supporting the ALJ's step-five determination because the vocational expert "identif[ied] a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy." Osenbrock v. Apfel, 240 F.3d 1157, 1162-1163 (9th Cir. 2001).

1 Accordingly, the ALJ did not err in failing to apply Rule 201.12 or in eliciting testimony from a vocational expert regarding alternative jobs that a person with plaintiff's vocational profile and RFC could perform.

**Hypothetical questions**

Plaintiff contends that the ALJ failed to include in his RFC finding nonexertional limitations assessed by the nonexamining state agency physician, Dr. Kalmar, who indicated that plaintiff would need to avoid concentrated exposure to extreme cold and concentrated exposure to hazards such as machinery and heights. [AR 393].

The ALJ's job at the fifth step in the sequential evaluation procedure is to pose hypothetical questions that set out all of the claimant's impairments for the consideration of the vocational expert, who then "translates these factual scenarios into realistic job market probabilities . . . ." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). Hypothetical questions posed to the vocational expert must accurately describe all of the limitations and restrictions of claimant that are supported by the record. Tackett, 180 F.3d at 1101; Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993).

The ALJ's hypothetical question to the vocational expert omitted these environmental limitations, but plaintiff has not met her burden to show harmfulness by demonstrating a substantial likelihood that she was prejudiced by that omission. See Ludwig, 681 F.3d at 1054-1055. Defendant contends that the occupational classifications in the Dictionary of Occupational Titles ("DOT") for the jobs of cashier II, bench assembler, and charge account clerk[4] state that extreme cold and hazardous conditions (vibration, moving mechanical parts, electric shock, high exposed places, radiation, explosive, and toxic chemicals) are "not present." [JS 23-24]. Additionally, SSR 96-9p instructs that "[i]n general, few occupations in the unskilled sedentary occupational base require work in environments with extreme cold, extreme heat, wetness, humidity, vibration, or unusual hazards," and that hazards that "are considered unusual in unskilled sedentary work" include "moving mechanical parts of equipment, tools, or machinery; electrical shock; working in high, exposed places; exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals." SSR 96-9p, 1996 WL 374185, at *9. "Even a need to avoid all exposure to these

---

[4] The DOT occupational classification numbers for those three jobs are 211.462-010, 706.684-042, and 205.367-014, respectively.

9

conditions would not, by itself, result in a significant erosion of the occupational base." SSR 96-9p, 1996 WL 374185, at *9.

Plaintiff contends that the <u>DOT</u> job descriptions and the guidelines in SSR 96-9p do not rule out the possibility that a complete hypothetical might have changed the vocational expert's testimony as to the alternative jobs the hypothetical person could perform. That generalized contention is insufficient to show prejudice or a substantial likelihood of prejudice. Plaintiff has not pointed to any evidence in the record or of which judicial notice may be taken suggesting that any of the alternative jobs the vocational expert identified would require concentrated exposure to extreme cold or hazards. Therefore, she has not met her burden to show harmfulness.

## Conclusion

For the reasons described above, the Commissioner's decision is supported by substantial evidence and is free of reversible legal error. Therefore, the Commissioner's decision is **affirmed**.

**IT IS SO ORDERED.**

June 18, 2013

_____
ANDREW J. WISTRICH
United States Magistrate Judge